**UNITED FOOD & COMMERCIAL WORKERS, Plaintiff–Appellant,**

v.

**NATIONAL TEA COMPANY, a/k/a National Supermarkets of Louisiana, Inc., Defendant–Appellee.**

No. 89–3387.

United States Court of Appeals, Fifth Circuit.

April 27, 1990.

William Lurve, Gardner, Robein & Healey, Metairie, La., for plaintiff-appellant.

Michael S. Mitchell, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for defendant-appellee.

Before BROWN, WILLIAMS and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case arises out of a dispute over an arbitration award interpreting a collective bargaining agreement. We are called upon to review a district court decision vacating part of the arbitrator's award and denying the union's request for attorney's fees.

## I.

National Tea Company, d/b/a National Supermarkets, Inc., operates supermarkets throughout Louisiana. United Food & Commercial Workers Union, Local No. 210, represents National's employees. In 1987, the Union and National signed a collective bargaining agreement covering National's meat, delicatessen, and seafood employees. Because National was in the midst of an economic crisis, the Union agreed to several concessions in the new agreement. These concessions included, among others, eliminating the "guaranteed" forty hour work week, reducing wages, and granting the company a limited right to offer to "buy out" employees who were unwilling to accept less than full-time status. Under the buy out provision, National could pay a pre-determined amount to a limited number of full-time employees who chose to retire, exchanging their full-time status and seniority for cash.

After the agreement took effect, National began to restructure its workforce by increasing the percentage of hours worked by part-time employees and decreasing the percentage of hours worked by full-time employees. A number of full-time employees were bought out by National under the terms of the agreement. National then reduced the hours of some full-time workers who declined to be bought out. This reduction of full-time workers' hours occurred while part-time and probationary employees remained on the payroll. The company also hired new part-time employees to work hours taken from full-time workers.

The Union filed a grievance over the company's actions alleging that National violated provisions of the collective bargaining agreement on seniority and hours of work. The arbitrator sustained the Union's grievance, finding that the full-time employees still on the payroll had been "effectively laid off insofar as those reduced hours are concerned." The arbitrator held that National had violated the agreement's seniority provisions because these "lay-offs" occurred while part-time employees remained on the payroll. The arbitrator ordered National "to restore all full-time employees to a forty (40) hour work week in those stores where there are part-time employees and/or probationary employees on the payroll."

National and the Union could not agree on the proper interpretation of portions of the arbitrator's award. The Union filed suit in federal district court to have the award enforced. National answered and filed a counterclaim. The parties then jointly requested the arbitrator to issue a clarification of his award responding to two questions: (1) Was National required to re-transfer full-time employees back to the store in which they worked prior to the reduction in their hours? (2) Was National required to release all part-time workers prior to reducing the hours of full-time workers, or only those part-time employees

within the full-time workers' job classifications? The arbitrator answered that National (1) was not required to re-transfer full-time employees but (2) was required to release all part-time employees in all job classifications before full-time employees' hours were reduced.

Both parties filed motions for summary judgment before the district court. The Union sought enforcement of the award and recovery of its attorney's fees. National sought summary judgment on the ground that the arbitrator's award and clarification were not based upon an interpretation of the agreement. The district court partially granted the Union's motion for summary judgment, upholding the award on all the issues except the clarification of which part-time employees must be laid off. On that issue, the court vacated that part of the award ordering National to dismiss all part-time employees without regard to job classification before full-time employees' hours were reduced. The court also denied the Union's request for attorney's fees.

## II.

■ The issue presented to us arises out of the breadth of the arbitrator's award in its protection of the work hours of full-time employees. Article 9 Section 3 of the contract provides that "[n]o full-time employee within a job classification in the same seniority area shall be laid-off when a part-time or casual employee is still on the payroll. . . ." National argued that the phrase "within a job classification" applied equally to "full-time employee" and to "part-time or casual employee." National argued that under this provision, the company was required to release only the part-time employees in the same job classification as the full-time employee whose hours were to be reduced. The arbitrator held, however, that "within a job classification" applied only to "full-time employees," therefore National was required to release all part-time employees, regardless of job classification, before any full-time worker's hours could be reduced.

National challenged the clarification before the district court, arguing that the arbitrator had ignored the "within a job classification" phrase. The district court agreed with National and held that the arbitrator ignored the phrase "because his interpretation . . . renders the phrase utterly devoid of meaning . . . [which] is tantamount to ignoring it." On this basis, the district court vacated part of the arbitrator's award. We point out that this analysis by National in its terms sounds of interpretation of the contract, the very thing the arbitrator was hired to do.

Thus, we do not agree with the district court's conclusion that the arbitrator ignored the agreement. The arbitrator found:

[s]tudy of Article 9, Section 3 shows that the intent was to protect the full-time employee from lay-off. The only reference to "within a job classification" applies to the full-time employee. The section reads " ... when a part-time ... employee is still on the payroll ......" There is no language stating that the full-time employee shall not be laid off while there are part-time employees working in the same job classification. The Company's interpretation would require adding such a phrase.

Whether this interpretation was right or wrong in the eyes of National and the district court, it certainly was a conclusion based upon the arbitrator's interpretation of the contract. It was not something foreign to the contract. Indeed, the arbitrator in his view felt so constrained by the contract that he asserts he would have had to add a phrase that would have given Article 9 Section 3 the meaning sought by National. We conclude that the arbitrator did not ignore the collective bargaining agreement in issuing his clarification award.

The arbitrator's award was an interpretation of an ambiguous contract provision. National and the district court concluded that the interpretation was wrong. That is a reasonable view. But the lesson of the cases is that that is not enough.

It is well established that the power of federal courts to review decisions of labor

arbitrators is severely limited. *Dixie Mach. Welding & Metal Works, Inc. v. International Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 37, AFL–CIO*, 867 F.2d 250, 252 (5th Cir.1989). Judicial review of labor arbitration awards is limited to a determination whether the award "stems from fraud or partiality ... concerns a matter not subject to arbitration under the contract ... does not 'dra[w] its essence' from the contract ... or ... violates public policy." *Manville Forest Prod. Corp. v. United Paperworkers Int'l Union, AFL–CIO*, 831 F.2d 72, 74 (5th Cir.1987). Courts will not disturb a labor arbitrator's award on the ground that it is based upon "improvident, even silly, factfinding...." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). Courts also will not disturb awards "on the ground that the arbitrator misread the contract." *Id.*

 It is clear that the arbitrator in his award drew its essence from the contract. His interpretation was his exclusive province once the parties vested in him the authority to resolve their dispute. It is not for the courts to agree or disagree with his interpretation. That it was a contract interpretation is clear, and we have no authority to disturb it. *Misco*, 484 U.S. 29, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 and *Dixie Mach.*, 867 F.2d 250, 252.

Because we find that the clarification award was based upon interpretation of the contract and because there are no allegations that the award stemmed from fraud or partiality, or concerned a matter not subject under the contract to arbitration, or violated public policy, we reinstate the portion of the award vacated by the district court.

### III.

The Union seeks recovery of the attorney's fees it has expended in enforcing the arbitrator's award. The district court refused this request. While we now reverse the district court and reinstate the award, we decline to label National's challenge that was accepted by the district court so unfounded as to merit awarding the Union attorney's fees. *See Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 906 (5th Cir.1984).

### IV.  *Conclusion*

We reverse the district court's decision vacating part of a labor arbitration award and enforce the entire award. We affirm the district court's denial of attorney's fees to the Union.

REVERSED IN PART, AFFIRMED IN PART and RENDERED.